## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### *Electronically Filed*

| | | |
|---|---|---|
| Katie Ohle, | ) | |
| | ) | **Case No. 1:09-cv-2794-BYP** |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | **JUDGE BENITA Y. PEARSON** |
| | ) | |
| DJO, Incorporated, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## RESPONSE IN OPPOSITION TO DEFENDANTS' CROSS MOTIONS IN SUPPORT OF THE APPLICATION OF STATUTORY DAMAGE CAPS TO PLAINTIFF'S CLAIMS

### I.    INTRODUCTION

Plaintiff Katie Ohle has suffered a significant deformity in the form of substantial

multiple, large, visible keloid scars and the removal of a portion of the head of her right humerus.

The Defendants have not contested these injuries.[1] In light of the undisputed facts, Plaintiff has

moved this Court to hold that the statutory caps on noneconomic damages does not apply

pursuant to the exception set forth in O.R.C. §2315.18(B)(3)(a), or in the alternative  hold that

whether the exception applies is a question of fact for the jury.  Ohio law and the Ohio Jury

Instructions support Plaintiff's position.

Defendants do not contest the existence of the Plaintiff's injuries or the fact that they are

permanent.  Instead, the Defendants attempt to conflate the three different exceptions available

under O.R.C. §2315.18(B)(3)(a): "permanent and substantial physical deformity"; "loss of use of

---

[1] *DJO, LLC's and DJO Global, Inc.'s Brief in Support of Application of Statutory Damage Caps to Plaintiff's Claims* ("*DJO's Briefing*"), D.N. 69, 13 (May 2, 2012); *Defendants Moog Inc. and Curlin Medical Inc.'s Brief in Support of Application of the Noneconomic Damages Cap Pursuant to Ohio Rev. Code §2315.18* ("*Moog and Curlin's Briefing*"), D.N. 71, 2-3 (May 2, 2012).

limb"; and "loss of a bodily organ system."  Despite the clear use of the word "or" in the statute, the Defendants argue that Plaintiff must prove that her injury meets all three exceptions in order to avoid the statutory cap on damages.  Defendants also argue that each of these exceptions should be used to give meaning to the others.  This is incorrect.   This argument ignores the basic canons of statutory construction.  Courts have routinely held that the use of the word "or" indicates that terms should be given separate meanings, unless the context dictates otherwise. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979); *Erie R. Co. v. United States*, 240 F. 28, 32 (6th Cir. 1917); *O'Toole v. Denihan*, 118 Ohio St. 3d 374, 382 (Ohio 2008).  If the Ohio legislature had intended to require that a deformity necessitate or be substantially equivalent to the loss of the use of a limb or the loss of a bodily organ system, they simply would have omitted the exception for permanent and substantial physical deformities. As this language is included, the exception for "permanent and substantial physical deformity" should be understood as broadening the scope of the statute. *See Bettman v. U.S.*, 224 F. 819, 825 (6th Cir. 1915); *O'Toole v. Denihan*, 118 Ohio St. 3d 374, 382 (Ohio 2008); *Southern Surety Co. v. Standard Slag Co.*, 117 Ohio St. 512, 519 (Ohio 1927).

Finally, Defendants argue that as a matter of law, a surgical scar cannot qualify as a permanent and substantial physical deformity. These arguments are contradicted by Ohio case law, including the case law cited by the Defendants in support of their argument. Ohio courts have previously held that surgical scars do qualify as permanent and substantial physical deformities under O.R.C. §2315.18(B)(3)(a) or have submitted this issue to the jury when a genuine issue of material fact exists. The argument that the applicability of the exceptions under O.R.C. §2315.18(B)(3)(a) is an issue for the jury to determine is best evidenced by the Ohio Jury Instructions.  O.J.I. CV 315.01(6)   provides that the jury should determine whether an injury

constitutes a permanent and substantial physical deformity. Plaintiff is not requesting that the

Court create new law. Plaintiff is merely requesting that the Court follow the existing precedent

on this issue.

## II.     Argument

### A.      The Use of the Word "Or" Means A Permanent and Substantial Deformity Need Not Rise to the Level of the Loss of Use of a Limb or the Loss of a Bodily Organ System.

The Defendants attempt to conflate the three separate conditions listed as exceptions by

O.R.C. §2315.18(B)(3)(a). Defendants argue that a permanent and substantial deformity must be

substantially equivalent to the loss of the use of a limb or the loss of a bodily organ system in

order to qualify as an exception under O.R.C. §2315.18(B)(3)(a). *Moog and Curlin's Briefing*,

D.N. 71, 5 (May 2, 2012) ("Clearly, a substantial deformity must rise to the level of severity akin

to the loss of a body system."; "[S]tatutory construction precedents dictate that the severity of the

deformity be akin to the significance of the loss of a limb or bodily system."); *DJO's Briefing*,

D.N. 69, 12 (May 2, 2012) ("[T]he overall purpose of the damage cap statute makes clear that

such a deformity must be catastrophic – on par with the loss of a limb or organ system.")

Defendants then proceed to argue that Katie Ohle's deformity is not on par with the loss of a

bodily organ system or the use of a limb.

Defendants' argument erroneously ignores the effect of the use of the word "or." The

United States Supreme Court, Sixth Circuit, and Ohio Supreme Court have consistently held that

the use of the word "or" means that the terms should be given separate meanings. *Reiter v.*

*Sonotone Corp.*, 442 U.S. 330, 339 (1979); *Erie R. Co. v. United States*, 240 F. 28, 32 (6th Cir.

1917); *O'Toole v. Denihan*, 118 Ohio St. 3d 374, 382 (Ohio 2008). As Ohio law provides that an

exception to the cap on noneconomic damages if the Plaintiff sustains a "[p]ermanent and

3

substantial physical deformity, loss of use of a limb, **or** loss of a bodily organ system," the three terms must be given separate meanings. *O.R.C. § 2315.18(B)(3)(a)* (emphasis added). Defendants' argument violates this fundamental canon of construction by attempting to require a permanent and substantial physical deformity to rise to the level of the loss of a bodily organ system or the use of a limb.

If the Court adopted the Defendants' reasoning, it would render language of the statute meaningless as substantial physical deformities would only exist where there was also the loss of a bodily organ system or the loss of the use of a limb. Courts have consistently rejected such a result. Rather than ignoring language used by the legislature, courts are obliged to "give effect, if possible, to every word Congress uses." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979); *U.S. v. Bolden*, 1991 U.S. App. LEXIS 29374, *10 FN 1 (6th Cir. Dec. 5, 1991). In order to give effect to the words the Ohio legislature used, the term "permanent and substantial physical deformity" should be given a different meaning than the terms "loss of use of a limb" and "loss of a bodily organ system."

For this reason, Courts have consistently noted that the use of the word "or" necessarily broadens the scope of a statute. *See Bettman v. U.S.*, 224 F. 819, 825 (6th Cir. 1915); *O'Toole v. Denihan*, 118 Ohio St. 3d 374, 382 (Ohio 2008); *Southern Surety Co. v. Standard Slag Co.*, 117 Ohio St. 512, 519 (Ohio 1927). In this case, the use of the word "or" broadens the exceptions to Ohio's damages cap. The plain language of the statute indicates that the Ohio legislature intended for Plaintiffs who suffered permanent and substantial physical deformity but not the loss of the use of a limb or the loss of a bodily organ system to be able to recover the full amount of their damages.

As Defendants improperly attempt to conflate the three separate exceptions to the Ohio damages cap provided by *O.R.C. § 2315.18(B)(3)(a)*, their argument is not well taken. Case law from the United States Supreme Court, Sixth Circuit, and Ohio Supreme Court all support the conclusion that the three terms should be given separate meanings. For these reasons, the Defendants' argument is not well taken.

### B.    Severe Surgical Scarring and Removal of a Body Part Constitute a Permanent Substantial Physical Deformity

Defendants' final argument is that as a matter of law surgical scarring cannot be a permanent and substantial physical deformity. Defendants Moog Inc. and Curlin Medical Inc. even go so far as to state that "no Ohio court has *ever* held that a surgical scar qualifies as an exception to the non-economic damages limitation." *Moog and Curlin's Briefing*, D.N. 71, 8 (May 2, 2012). Defendants' arguments are contradicted not only by Ohio law, but also by the cases cited in their own briefs.

Notably, the case of *Bransteter v. Moore* held "scarring **may** be so severe as to qualify as a serious disfigurement" exempting a plaintiff from the application of the non-economic damages cap provided by *O.R.C. § 2315.18*. **Ex. A**, *Bransteter v. Moore*, 2009 U.S. Dist. LEXIS 6692, *6 - 7 (N.D. Ohio Jan. 21, 2009). On its own, *Bransteter* refutes Defendants' argument that as a matter of law surgical scarring cannot be a permanent and substantial physical deformity.

Defendants Moog Inc. and Curlin Medical Inc. attempt to distinguish this case by arguing that "the court withheld judgment" and planned to resolve the issue following trial testimony. *Moog and Curlin's Briefing*, D.N. 71, 8 (May 2, 2012). Defendants' argument implies that the *Bransteter* Court intended to rule on this issue as a matter of law after hearing testimony at trial. However, given the Court's statement that the plaintiff could "request a jury interrogatory", it is

5

plainly apparent that the *Bransteter* Court intended to submit this issue to the jury. **Ex. A**, *Bransteter v. Moore*, 2009 U.S. Dist. LEXIS 6692, *7 (N.D. Ohio Jan. 21, 2009). The holding of the *Bransteter* case is also supported by the fact that there is an Ohio Jury Instruction that specifically instructs the jury on how to determine if the statutory exception applies. O.J.I.  CV 315.01(6) instructs the jury for claims arising on or after April 7, 2005 as follows:

> If you decide to award compensatory damages for permanent [injury] [loss], **you will further decide whether the [injury] [loss] involved**
>
> > **<u>permanent and substantial physical deformity</u>,** loss of use of limb or loss of a bodily organ system….

**Ex. C**, Ohio Jury Instruction CV 315.01 (6) (emphasis added). This jury instruction clearly indicates that where a question of material fact exists, the jury should decide whether a plaintiff suffered a permanent and substantial physical deformity. For this reason, Defendants' attempt to distinguish the *Bransteter* case fails. *Bransteter* and Ohio Jury Instruction CV 315.01(6) clearly support Plaintiff's argument that the issue of whether Plaintiff's scars and removal of a portion of her body constitutes a permanent and substantial physical deformity should be determined by the jury.

Defendants also cite to the case of *White v. Bannerman*, 2010 Ohio 4846 (Ohio Ct. App. 2010).  In *White*, the plaintiff suffered scarring to her face and hands as well as extensive damage to the tendons in her hands, which prevented the plaintiff from caring for herself. *Id.* at P8 – P9. Based upon its "review of the evidence presented, including [the plaintiff's] testimony of the substantial nature of her injuries to both her hands, *photographs of her injuries*, and the objective permanency thereof *in appearance* and function," the Court of Appeals held that the trial court properly applied an exception to the statutory cap on noneconomic damages provided by *O.R.C.*

*§ 2315.18*. *Id.* at P87. It is unclear to what extent the Court of Appeals based its decision upon the plaintiff's scarring as opposed to her inability to independently care for herself.

To the extent the *White* Court held that scarring constitutes a permanent and substantial deformity, this same reasoning applies to Plaintiff's case. As in *White*, Plaintiff Katie Ohle suffered multiple scars that are visible and permanent. For this reason, *White* supports Plaintiff's argument that her scarring and removal of a portion of the head of her humeral bone constitute a permanent and substantial physical deformity.

Defendants DJO, LLC and DJO Global, Inc. ("DJO") initially argue that the *White* case is distinguishable because the Plaintiff "has no need for a caretaker, has full use of her hands, and can perform a wide variety of tasks using both arms." *DJO's Briefing*, D.N. 69, 13. However, these distinctions are only relevant in so far as the Court of Appeals in *White* based its decision upon the Plaintiff's inability to perform life sustaining functions, rather than upon the Plaintiff's scarring. There is no holding or indication in *White* that a plaintiff must need to have a caretaker, be unable to use their hands, or be unable to perform basic activities in order to have a permanent and substantial physical disfigurement. Instead, these distinctions indicate, as Plaintiff previously stated, that the Court of Appeals in *White* may have also based its decision upon the Plaintiff's inability to care for herself as provided by *O.R.C. §2315.18(B)(3)(b)*.

Defendants Moog Inc. and Curlin Medical Inc. argue that *White* cannot support Plaintiff's argument as the scarring in the *White* case was "far more severe than plaintiff's herein, and [was] visible in multiple locations, including the face." *Moog and Curlin's Briefing*, D.N. 71, 6 (May 2, 2012). DJO similarly argues that the exemption should not apply as the Plaintiff's scars are not visible so long as the Plaintiff is "wearing a short sleeve shirt." *DJO's Briefing*, D.N. 69, 13 (May 2, 2012). Defendants' arguments are misleading and disingenuous. They imply that

7

Plaintiff's scarring is not often visible and should be minimized. They fail to account for the many times when Plaintiff Katie Ohle's scarring will be visible, including her wedding day, any time she wears a sleeveless dress or shirt, any time she wears a bathing suit, and any other time that her shoulders are bare. While other people frequently see Plaintiff's scarring, perhaps more importantly, Katie Ohle sees these scars every day and considers them when choosing what clothing she can wear. Plaintiff's scarring should not be minimized.

Defendants' arguments further fail because the location of scarring does not itself dictate whether the scarring qualifies as a permanent and substantial physical deformity. Notably, the scarring in the *Bransteter* case was located on the plaintiff's abdomen, an area that is usually covered by clothing. **Ex. A**, *Bransteter v. Moore*, 2009 U.S. Dist. LEXIS 6692, *6 (N.D. Ohio Jan. 21, 2009). Similarly, it is probable that the scarring in *Bransteter*, which resulted from several surgeries to repair a perforated bowel,[2] was less severe than the scarring in the *White* case, which resulted from glass that was imbedded in the plaintiff's face and hands[3]. Neither the location of Plaintiff's scarring, nor the fact that it may have been less severe than another plaintiff's scarring, renders her scarring incapable of being a permanent and substantial physical deformity as a matter of law. For these reasons, Defendants' attempts to distinguish *White* are not well taken.

Finally, the Defendants cite the case of *Weldon v. Presley* in support of their argument that the Court should hold as a matter of law that Plaintiff's scarring cannot constitute a permanent and substantial physical disfigurement. **Ex. B**, *Weldon v. Presley*, 2011 U.S. Dist. LEXIS 95248 (N.D. Ohio 2011). DJO argues that the *Weldon* "court made the straightforward point that the overall purpose of the damage cap statute makes clear that such a deformity must

---

[2] *Id.* at *6.
[3] *White v. Bannerman*, 2010 Ohio 4846, P8 (Ohio Ct. App. 2010).

be catastrophic – on par with the loss of a limb or organ system." *DJO Briefing*, D.N. 69, 12 (May 2, 2012).

This interpretation of *Weldon* is disingenuous at best.  If anything, *Weldon* supports Plaintiffs' argument that the Court should either hold that the exception to the cap applies based on the facts in evidence that are not refuted or hold that a genuine issue of fact exists that must be resolved by the jury. In *Weldon*, the Plaintiff suffered a single 4 cm long scar after spinal surgery. **Ex. B**, *Weldon v. Presley*, 2011 U.S. Dist. LEXIS 95248, *21 (N.D. Ohio 2011). The Northern District of Ohio expressly distinguished the single small scar in *Weldon* from the scarring in the *Bransteter* and *White* cases. The court held that this incidental scar could not rise to the level of a substantial deformity as the plaintiff's "**scar is not equivalent to the multiple scarring at issue in *Bransteter*** or the disfigurement of hands and face noted in *White*." *Id.* Unlike in *Weldon*, where the plaintiff sustained a single scar, and like in *Bransteter*, where the plaintiff suffered multiple scarring, Plaintiff Katie Ohle has suffered multiple visible keloid scars. Thus, the reasoning in *Weldon* actually supports Plaintiffs' argument that Plaintiff's scarring either is a permanent and substantial physical deformity as a matter of law or presents a question of fact for the jury to decide.

Defendants have failed to present this Court with any case law that holds scarring as a matter of law cannot constitute a permanent and substantial physical deformity. Indeed, the only case law they cite for this proposition actually recognizes that multiple scarring or extensive scarring can constitute a permanent and substantial physical deformity. As Plaintiff Katie Ohle has multiple, substantial, large, visible keloid scars on her shoulder, Defendants' arguments that as a matter of law she has not sustained a permanent and substantial physical deformity are not well taken.

None of the cases cited by Defendants refute Plaintiff's argument that the exception for permanent and substantial physical deformities should apply when a plaintiff has had a body part surgically removed and replaced with a prosthesis. In fact, Defendants failed to argue this issue at all.

As discussed at length in *Plaintiff's Briefing*, the removal of a portion of the head of Plaintiff's humerus is a permanent and substantial physical deformity. A deformity is defined as a "physical blemish or distortion." *Meriam Webster Dictionary Online*: www.merriam-webster.com/medical/deformity. As Katie Ohle suffered a distortion of her normal human anatomy by virtue of the fact that she has had a body part removed and replaced with a metal prosthesis, she suffered a physical deformity. This deformity is obviously permanent. The removal of person's natural body part and replacement of that body part with a foreign metal prosthetic is extreme, invasive, and life-altering. For these reasons, Plaintiff's deformity is also substantial.

The cases cited by the Defendants do not refute Plaintiff's argument. In fact, they tend to support Plaintiff's argument. In *Weldon*, the Court specifically noted that that the plaintiff "suffered no anatomical or structural alteration of her spine as a result of the accident." **Ex. B**, *Weldon v. Presley*, 2011 U.S. Dist. LEXIS 95248, *4 (N.D. Ohio 2011). The Court's care in specifically reiterating that Plaintiff did not have any alteration of her bone structure indicates that such an alteration could constitute a permanent and substantial physical deformity. As scarring can qualify as a permanent and substantial physical deformity, it is hard to believe that the removal of a person's natural body part and replacement of that body part with a foreign metal prosthesis cannot.

Defendants may attempt to argue that in these cases, no plaintiff was found to have suffered a permanent and substantial deformity due to the removal and replacement of a body part with a prosthetic. However, this is easily explained. The plaintiffs in *Bransteter*, *White*, and *Weldon*, did not have any of their body parts removed and replaced with a prosthetic. **Ex. A**, *Bransteter v. Moore*, 2009 U.S. Dist. LEXIS 6692, *6  (N.D. Ohio Jan. 21, 2009) (Noting that plaintiff suffered a perforated bowel with scarring from the surgeries to repair this perforation.); *White v. Bannerman*, 2010 Ohio 4846, P8 – P9 (2010) (Noting that plaintiff suffered severed tendons and scarring resulting from glass that was imbedded in her hands and face); **Ex. B**, *Weldon v. Presley*, 2011 U.S. Dist. LEXIS 95248, *4 (N.D. Ohio 2011) (Noting that plaintiff did not suffer any alteration of her spine as a result of her injuries.)

Defendants may also attempt to argue that the removal of a body part and its replacement by a foreign metal prosthetic cannot fall within the definition of a "permanent and substantial physical deformity" because it is not specifically mentioned in the statute. This argument is meritless. In *Bransteter*, the Northern District of Ohio rejected the exact same argument when it was made regarding scarring. **Ex. A**, *Bransteter v. Moore*, 2009 U.S. Dist. LEXIS 6692, *6 - 7 (N.D. Ohio Jan. 21, 2009). As a permanent and substantial physical deformity can be in the form of scarring, it stands to reason that the removal and replacement of a body part with a metal prosthetic can also be a permanent and substantial physical deformity. For these reasons, this argument is not well taken.

### III.    Conclusion

Defendants do not contest that Plaintiff has keloid scars on her right shoulder. Defendants have not presented this Court with any case law which holds that scarring of the kind suffered by Plaintiff Katie Ohle as a matter of law cannot constitute a permanent and substantial physical

11

deformity. Instead, the only cases cited by the parties (*Bransteter*, *White*, and *Weldon*) maintain that scarring, including multiple scarring like the kind suffered by Plaintiff Katie Ohle, can constitute a permanent and substantial physical deformity.

For these reasons and the reasons stated above, Defendants' request that this Court hold Plaintiff Katie Ohle has not suffered a permanent and substantial physical deformity is not well taken. For the reasons stated above and in *Plaintiff's Cross Motion on Interpretation of O.R.C. 2315.18(B)(2) and the Exception Set Forth in O.R.C. 2315.18(B)(3)(a)*, D.N. 70 (May 2, 2012) and the memorandum in support thereof, D.N. 70-1 (May 2, 2012), Plaintiff respectfully requests that this Court hold that the Plaintiff, Katie Ohle, has sustained a permanent and substantial physical deformity that constitutes a valid exception to the statutory cap on non-economic damages or that whether she has sustained a permanent and substantial physical deformity is a genuine issue of fact to be decided by the jury at the trial of this matter.

Dated: May 16, 2012                Respectfully submitted,

                                  *\_/s/ Ronald E. Johnson, Jr._____*
Ronald E. Johnson, Jr. (0083072)
*rjohnson@pschachter.com*
**SCHACHTER, HENDY & JOHNSON, PSC**
909 Wright's Summit Parkway, Suite 210
Fort Wright, KY 41011
859-578-4444

AND

Stuart Garson
*sgarson@seamangarson.com*
Glenn D. Faegan
*gfeagan@seamangarson.com*
**Seaman Garson LLC**
614 West Superior Ave.
16th Floor - Rockefeller Building
Cleveland, OH 44113
(866) 409-6215

*Co-Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was electronically served upon counsel for all parties via the Court's CM/ECF system on the date of filing.

*/s/ Ronald E. Johnson, Jr.*
RONALD E. JOHNSON, JR.