PEARSON, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| KATIE OHLE, | ) | |
| | ) | CASE NO. 1:09-cv-02794 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| DJO, INCORPORATED, *et al.*, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER (Resolving ECF Nos. 70** |
| Defendants. | ) | **and 71)** |

On May 2, 2007 Dr. John Krebs performed arthroscopic surgery on plaintiff Katie Ohle's shoulder.  Post operation Dr. Krebs inserted a DonJoy pain management pump (pain pump) into Ohle's shoulder.  The pain pump continuously injected anesthetic into Ohle's shoulder. Defendants DJO Incorporated and DJO, LLC (DJO) marketed and distributed the pain pumps. Defendants McKinley, Moog, and Curlin manufactured the pain pumps.  Ohle alleges strict liability, negligence, and breach of warranty claims against defendants.

Pending are counter-motions on the applicability of Ohio's statutory maximum award for noneconomic damages, O.R.C. § 2315.18(B)(3)(a).  ECF Nos. 70 and 71.  For the reasons that follow, the Court denies Defendant's motion and denies in part and grants in part Plaintiff's motion.

Jurisdiction exists under 28 U.S.C. § 1332.

### Factual Background

On May 2, 2007, Dr. Krebs performed shoulder tightening surgery on plaintiff Katie Ohle then aged 16.  Dr. Krebs noted Ohle's cartilage thickness was normal.

(4:11cv106)

After surgery Dr. Krebs inserted a pain pump into Ohle's shoulder.  For about forty-eight hours the pump directly released pain medication into Ohle's shoulder.  For a while thereafter, Ohle experienced pain relief.  However, in 2008, Ohle again began experiencing pain.  On June 30, 2009, Ohle visited Dr. Serna's office.  Dr. Serna discussed a diagnosis of chondrolysis[1] with Ohle.  Dr. Serna referred Ohle to Dr. Mark Schickendantz. On July 30, 2009, Ohle visited Dr. Mark Schickendantz's office.  He confirmed the diagnosis of chondrolysis. Dr. Schickendantz told Ohle she might need a shoulder replacement.  On September 11, 2009, Ohle visited Dr. Joseph Iannotti's office.  Dr. Iannotti also diagnosed Ohle with chondrolysis. Dr. Iannotti attributed Ohle's loss of cartilage to the pain pump.  Dr. Samer Hasan also evaluated Ohle. Dr. Hasan concurred the pain pump was the most likely cause of Ohle's chondrolysis.  Dr. Hasan concluded the rapid deterioration of the cartilage and the short pain free period after Ohle's surgery demonstrated the pump and not the prior surgery caused Ohle's cartilage to deteriorate.

On June 10, 2011, at age twenty, Ohle underwent a second surgery to alleviate the pain caused by her cartilage loss.  Dr. Hasan sawed off a portion of the head of Ohle's humerus bone and replaced the bone with a metal prosthesis.  Currently, Ohle has full use of her arm. However, Ohle alleges her current prosthesis will deteriorate and need to be revised in five to ten years. Ohle also claims she will need a full shoulder replacement in approximately twenty years.

---

[1] Chondrolysis is a complete or nearly complete loss of cartilage in the shoulder joint.

(4:11cv106)

## Standard of Review

A party is entitled to summary judgment under Fed. R. Civ. P. 56 when the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Cartrett,* 477 U.S. 317, 322 (1986).  The movant must initially show the absence of a genuine issue of material fact. Id. at 323.

Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).  Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex, supra,* 477 U.S. at 324.

In deciding a motion for summary judgment, the Court accepts the opponent's evidence as true and construes all evidence in the opponent's favor.  *Eastman Kodak Co. v. Image Tech. Servs., Inc.,* 504 U.S. 451, 456 (1992).  The movant can prevail only if the materials offered in support of the motion show there is no genuine issue of a material fact.  *Celotex, supra,* 477 U.S. at 323.

## Discussion

This case presents two issues:

(1)     Whether the court or a trier of fact should determine if an injury constitutes a permanent and substantial physical deformity under O.R.C. § 2315.18(B)(3)(a); and

(2)     Whether, in this case, there is sufficient evidence of permanent and substantial physical deformity to submit the issue to the jury.

3

(4:11cv106)

## I. Whether an Injury Constitutes a Permanent and Substantial Physical Deformity is a Question of Fact for the Jury

Pursuant to O.R.C. § 2315.18(B)(3)(a), Ohle claims her injury constitutes a permanent and substantial physical deformity entitling her to recover noneconomic damages in excess of the statutory maximum.  Ohle alleges her body has been deformed in three ways:  1) she lost all or nearly all of her shoulder cartilage; 2) her natural shoulder bone has been replaced with a metal prosthesis; and 3) she has a large raised keloid scar from her collar bone to her armpit and two smaller keloid scars on the front of her shoulder.  Defendants allege that Ohle's injury does not qualify as a permanent and substantial physical deformity under the statute and, therefore, Ohle's damages should be limited to the statutory maximum.

Under O.R.C § 2315.18 (B)(2), a plaintiff's damages for noneconomic losses are limited to the greater of $250,000 or three times their economic damages.  However, the statute exempts four general categories from the maximum:  1) permanent and substantial physical deformity; 2) loss of use of a limb; 3) loss of a bodily organ system; and 4) permanent physical functional injury that prevents self subsistence.  O.R.C. § 2318.18 (B)(3)(a),(b).  If the plaintiff proves an injury fits within a statutory exception, the court may enter judgment for damages in excess of the maximum.  O.R.C. § 2315.18 (E)(1).  If there is no applicable exception, then the court must reduce the damage award, as necessary, to within the statutory maximum.  *Id.*  The court must reduce the award "only after the jury has made its factual findings and determination as to the damages." *Id.*

4

(4:11cv106)

A.    **The Constitutionality of the Noneconomic Damages Cap is Premised On Preserving Traditional Fact Finder Roles**

In *Arbino v. Johnson & Johnson et al.*, 116 Ohio St.3d 468, 476 (2007) the Ohio Supreme Court upheld the noneconomic damages maximum against a multitude of constitutional attacks. Although the constitutionality of the maximum is not directly at issue in this case, the court's opinion in *Arbino* discussed at length the importance of preserving the fact finder's role under the statute.  That discussion is directly relevant in this case.

The court in *Arbino* made clear the noneconomic damages maximum is constitutional only "[s]o long as the fact-finding process is not intruded upon and the resulting findings of fact are not ignored or replaced by another body's findings." *Id* at 476.  The court cannot "impose its own factual determination regarding what a proper award might be."  The procedure for implementing the maximum should be analogous to the court's use of remittitur or application of treble damages. *Id.*  The court may alter the amount of money awarded to a plaintiff for noneconomic damages, but the court cannot disturb the jury's underlying factual determinations.

B.    **Prior Case Law Treats the Nature of the Injury as a Question of Fact for the Jury**

Under O.R.C. § 2315.18 (E)(2) parties may seek summary judgment on the nature of a plaintiff's injury.  The statute's explicit statement that summary judgment is available to the parties does not change the standard or purpose of the summary judgment motion.  As such, the court's fact-finding role is limited to the threshold determination of whether there is sufficient evidence to submit the issue of the nature of the injury to the jury.

5

(4:11cv106)

Federal courts in Ohio have consistently treated motions on the applicability of the noneconomic damages maximum as motions for summary judgment.  In doing so, they have also held that whether a deformity is sufficiently permanent and substantial should, once the plaintiff crosses an evidentiary threshold, be for they jury, not the court to decide.  *See Bransetter v. Moore,* 2009 WL 152317 (N.D. Ohio) (issue of whether perforated bowel and surgical scar qualified as deformity submitted to the jury); *Williams v. Bausch & Lomb Co.,* 2010 WL 2521753 (S.D. Ohio) (issue of whether loss of eyesight qualified as loss of organ system or caused permanent functional injury not submitted to jury because evidentiary threshold not met); *Weldon v. Presley,* 2011 WL 3749469 (N.D. Ohio) (issue of whether four cm surgical scar and spinal decompression surgery qualified as deformity not submitted to the jury because evidentiary threshold not met).

In *White v. Bannerman* 2010 WL 3852354 (Ohio Ct. App.), the court itself made the factual finding that plaintiff's scarring qualified as a deformity.  The circumstances in *White* distinguish that case from this case.  *White* was a bench trial in which the court properly acted as the trier of fact.

### C.      Pattern Jury Interrogatories Support Having the Jury Decide the Nature of the Injury

Ohio's Pattern Jury Instruction (O.J.I.) further support having the jury, and not the judge, decide the issue of the nature of a plaintiff's injury.  The Ohio Judicial Conference republished O.J.I. pattern jury interrogatories shortly after the General Assembly enacted the noneconomic damages cap.  Jurors now must indicate whether they found the plaintiff to be permanently and substantially physically deformed.  *See* Ohio Jury Instructions- Civil 315.01(6).  The court in

(4:11cv106)

*Bransteter* agreed issues concerning the nature and severity of a plaintiff's injury should be resolved by jury interrogatory at trial. *Bransteter, supra,* 2009 WL 152317 at *2.

## II.    Plaintiff Has Crossed the Evidentiary Threshold

Although the parties agreed to treat their motions informally, they ask, in effect, in light of the procedural posture of the cases cited above, for summary judgment on the issue of the applicability of the noneconomic damages cap. Accordingly, the Court will use the summary judgment standard to decide the issue of the applicability of the cap in this case.

Plaintiff argues the combination of destroyed cartilage, bone replacement, and scarring qualify, as a matter of law, as a permanent and substantial physical deformity. In the alternative, plaintiff argues these physical conditions present a genuine issue of material fact for the jury.

Defendants argue that, based upon the explicit text of the statute and the court's opinion in *Arbino*, this Court can determine whether Ohle's injury qualifies as a permanent and substantial physical deformity. Defendants allege the courts have established that, as a matter of law, internal modifications of a person's body structure and surgical scars cannot qualify as permanent and substantial physical deformities.

Contrary to the Defendants' contention, courts have left the determination of the nature of a plaintiff's injuries to the triers of fact. In *Bransteter*, the court left the jury to determine whether a perforated bowel and the resulting surgical scar on a plaintiff's abdomen qualified as a deformity. *Id* at *2. In *White*, the court, sitting as the fact finder, found that hand and facial scarring combined with numbness qualified as a deformity. *White, supra,* 2010 WL 385234 at *9. And in *Weldon*, the court narrowly held that a spinal decompression surgery involving no

7

(4:11cv106)

structural alteration of the plaintiff's spine was insufficient as a matter of law to present the issue of deformity to the jury.  *Weldon, supra,* 2011 WL 379469 at *1.

Here, the evidence of record persuades the undersigned that the plaintiff has provided enough evidence of the lasting and permanent effects of surgery and whether they have left a substantial deformity that will be permanent.

The jury is in the best position to determine whether the nature and location of scaring, removal of a portion of a bone, and/or total loss of cartilage deforms an individual.  When reasonable minds might disagree about the nature of a plaintiff's injuries, the Court cannot impose its own factual determination.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).

## Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT:

1.  Plaintiff's motion to find as a matter of law that there is sufficient evidence to submit the issue of deformity to the jury is granted.

2.  Plaintiff's motion for judgment as a matter of law that the noneconomic damages maximum does not apply to limit her recovery is denied.

3.  Defendant's motion to find as a matter of law that the noneconomic damages maximum limits plaintiff's recovery is denied.

IT IS SO ORDERED.

  September 28, 2012                                           */s/ Benita Y. Pearson*
Date                                                         Benita Y. Pearson
                                                            United States District Judge

8